IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOYD LANDON SORROW, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-16-2493 |
| | § | |
| EXECUTIVE DIRECTOR TDCJ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Texas state inmate Loyd Landon Sorrow alleges that the conditions of his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ") violate his civil rights under 42 U.S.C. § 1983 and the Americans with Disabilities Act. Sorrow represents himself and is proceeding without prepaying the filing fees. He sues four defendants: TDCJ Executive Director Brian Collier; the University of Texas Medical Branch at Galveston ("UTMB"); Erin Alison Jones, M.D.; and Stephanie Abron, M.D., both at UTMB. Two of the defendants, UTMB and Dr. Jones, have jointly moved to dismiss the complaint against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 54). Sorrow has filed a response. (Docket Entry No. 60). Based on the pleadings, the motion and response, the record, and the applicable law, the court grants the defendants' motion.[1] The reasons are explained below.

**I.     Background**

Sorrow alleges that all of the defendants have denied him adequate medical care and that Dr. Jones retaliated against him for various reasons. Sorrow's allegations against UTMB and Dr. Jones,

---

[1] On October 12, 2017, Dr. Abron filed a summary judgment motion, which is not yet ripe for decision. The court has granted TDCJ Executive Director Collier an extension to November 3, 2017, to file his summary judgment motion.

viewed in the light most favorable to him, are summarized below based on the facts Sorrow has pleaded in the complaint, his two responses to the court's order for a more definite statement, (Docket Entry Nos. 19, 21), and a chronology that he attached to his response to the motion to dismiss, (Docket Entry No. 60).

Sorrow's primary medical complaint is his knee pain. Sorrow injured his knee while serving in the military in 1977. He alleges that during his incarceration in TDCJ, he at times has been denied a classification as "medically unassigned" that would exempt him from prison work requirements. Sorrow also argues that he has been deprived of knee braces that he paid for with his veterans' benefits, but this argument does not address the claims against Dr. Jones and UTMB and is not discussed in this memorandum and opinion.

Sorrow also alleges that he has received inadequate care for a neck injury that he suffered during his incarceration in 2010 or 2011. He alleges that he was denied chiropractic care, traction, surgery, steroid injections, adequate medication, and ultra-sonic sound therapy for his neck. (More Definite Statement, Docket Entry No. 19, at 12 & 20). However, he states that he was treated at UTMB's spine clinic five or six times and was given pain medications, physical therapy, a neck brace, traction, and electro-convulsive shock therapy. (Chronology, Docket Entry No. 60, at 5-6; Complaint, Docket Entry No. 1, at ¶¶ 18-20). He further states that UTMB doctors told him that no surgery was available for his neck condition. (More Definite Statement, Docket Entry No. 19, at 23). Sorrow also alleges that he received inadequate care for Hepatitis C, which he was diagnosed as having in 2002. He alleges that the defendants denied him a cure for the disease and requests "Zeno Type One" treatment. (*Id.* at 1 & 20).

Dr. Jones worked for UTMB as the Medical Director at the C.T. Terrell Unit, where Sorrow

was confined when he filed this suit.[2] Sorrow obtained Dr. Jones's profile from the Texas medical board in August 2015 and noted that she was listed as practicing at TDCJ's Stevenson Unit. Sorrow apparently concluded, based on this profile, that Dr. Jones was practicing medicine without a license at the C.T. Terrell Unit. (*See* More Definite Statement, Docket Entry No. 19, at 4 (Dr. Jones "was not licensed to practice medicine in Brazoria County or C.T. Terrell Unit/Ramsey 3 Unit . . . according to the 'Patient Profile,' sent to me by the Texas Medical Board")). Sorrow told other inmates that Dr. Jones was not properly licensed. (*Id.*) On August 17, 2015, Sorrow had a "lay in" for a medical appointment with Dr. Jones. Sorrow appears to allege that this appointment was unnecessary and that Dr. Jones arranged it to retaliate against him for telling other inmates that she was not properly licensed. (Complaint, Docket Entry No. 1, at ¶ 23). Sorrow also alleges that Dr. Jones retaliated against him because she is biased against sex offenders.[3]

On October 16, 2015, Dr. Jones gave Sorrow a 60-day pass to be classified as medically unassigned and exempted from work duties. Sorrow states that in 2009, another doctor examined him and determined that he should be medically unassigned on an indefinite basis. (More Definite Statement, Docket Entry No. 21, at 28). Sorrow alleges that Dr. Jones improperly ended his indefinite exemption from work without first conducting a physical examination, relying instead on medical test results. Sorrow alleges that:

> [a]bout Oct. 16, 2015 [Dr. Jones] . . . "Medical Director," interviewed me and

---

[2] *See* Motion to Dismiss (Docket Entry. No. 54), at 1.

[3] *See, e.g.*, Complaint, Docket Entry No. 1, at ¶ 23 (alleging that Dr. Jones asked Sorrow about her medical profile and mumbled "child molester" when he passed her desk); Response, Docket Entry No. 60, at 2 (alleging that Dr. Jones retaliated because Sorrow explained to other inmates that she was registered as a medical doctor only on the Stevenson Unit); *id.* at 6 (Dr. Jones retaliated because Sorrow exposed her as Medical Director not Medical Unit Doctor and for "the nature of [his] crime").

3

> misinterpreted x-ray, and M.R.I. results, U.T.M.B. recommendations, and past medical history information[] on her computer "(her work tool)" and . . . with deliberate indifference, and reckless disregard to serious and substantial risks of injury or re-injury did deliberately change my inde[finite] medical work assignment to a 60 day expiration date, being a well educated, and highly intelligent human species, knowing that I would sooner or later be subjected to work, which would cause pain and possible re-injury.

(Complaint, Docket Entry No. 1, at ¶ 3). Sorrow also alleges that Dr. Jones had him moved out of the "boot camp" at the C.T. Terrell Unit, which he identifies as "cleaner" and "less restrictive" than other parts of the prison. (More Definite Statement, Docket Entry No. 19, at 4). Sorrow does not identify the date of the transfer or the location where he was transferred. He may be referring to his July 2016 transfer to the Jester III Unit for treatment of his neck injury. (Chronology, Docket Entry No. 60, at 5). In October 2015, Sorrow filed a Step 1 Grievance against Dr. Jones for taking away his indefinite exemption from work. He also filed complaints against her with the Texas Medical Board and Ethics Commission. (Complaint, Docket Entry No. 1, at ¶ 23; Chronology, Docket Entry No. 60, at 2-3).

Later in 2015, Sorrow was treated by Dr. Kubena Owusu. Sorrow states that Dr. Owusu was sympathetic to his complaints but could not override Dr. Jones's termination of Sorrow's indefinite work exemption. After the 60-day exemption expired, Dr. Owusu ordered additional short-term exemptions. (Chronology, Docket Entry. No. 60, at 2-3). Sorrow's exempt status lapsed briefly on March 9, 2016, and he was assigned to kitchen duties. Sorrow states that he did not work at that time "because [he] still had not been placed on a shift." (*Id.* at 3). On March 23, 2016, Dr. Owusu renewed Sorrow's restrictions for 90 days.

In March 2016, Sorrow filed a Step 1 Grievance over the alleged lack of medical attention for his neck and for his Hepatitis C, as well as Dr. Jones's refusal to issue an indefinite medical

exemption from work assignments. (Docket Entry No. 1-1, at 3). In May, after his grievance was denied, Sorrow filed a Step 2 Grievance, which also was denied. (Docket Entry No. 1-1, at 1).

On June 18, 2016, Sorrow's medical work exemption lapsed again. He filed a Step 1 Grievance about his medical status for work. (Docket Entry No. 21-1, at 7). In response to the grievance, TDCJ advised Sorrow in August that he had been "scheduled numerous times [for medical appointments] between May and June" but had "left without being seen and signed a refusal." TDCJ advised him to keep medical appointments in the future. (*Id.* at 8). Sorrow was assigned to a kitchen shift wiping tables. He worked there on June 27 and 28. On June 28, 2016, while he was working on a wet floor without his knee braces, Sorrow's left knee hyperextended. (Chronology, Docket Entry No. 60, at 4). Sorrow was reassigned to "scullery" duties in the kitchen, where he could work while holding onto a counter. (*Id.*).

On June 30 or July 1, 2016, Dr. Owusu prescribed pain medication and renewed the medical restrictions, exempting Sorrow from work assignments for 90 days. (*Id.*; Complaint, Docket Entry No. 1, at ¶¶ 15 & 17). Sorrow does not allege that he worked any shifts other than on June 27 and 28. It appears from his pleadings that he was granted a series of temporary exemptions until November 30, 2016, when his indefinite exemption was reinstated. (Chronology, Docket Entry No. 60, at 5-6; More Definite Statement, Docket Entry No. 21, at 28).

Sorrow filed this suit on August 12, 2016. He asserts claims under the Eighth Amendment and the Americans with Disabilities Act. He seeks a declaratory judgment, a refund of disability payments, an injunction ordering adequate medical care, and monetary damages for pain, suffering, mental anguish, and worry. UTMB and Dr. Jones have moved to dismiss the claims against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the court

lacks subject-matter jurisdiction and that Sorrow has failed to state a claim on which relief may be granted.

## II. The Applicable Legal Standards

### A. Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Invoking Eleventh Amendment immunity, the defendants argue that the court lacks subject-matter jurisdiction over claims against them in their official capacities as a state agency and state employee. Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (internal quotation marks and citations omitted).

Under Rule 12(b)(1), the district court "'has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party seeking federal court review bears the burden of demonstrating that jurisdiction is proper. *See Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir. 2000) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)).

### B. Failure to State a Claim Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quoting *Twombly*, 550 U.S. at 558) (internal

quotation marks and alteration omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (citing *Stripling v. Jordan Productions Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

Sorrow represents himself. Pleadings filed by a litigant "who is proceeding *pro se* are entitled to the benefit of liberal construction" and "are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal citation and quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"). Self-represented litigants must, however, explain or identify specific facts necessary to support their claims. *See, e.g, United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) (citing

*Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)); *Bookman v. Shubzda*, 945 F. Supp. 999, 1004-05 (N.D. Tex. 1996) (a *pro se* litigant has an obligation to support his claims).

**III. Analysis**

**A. The Official Capacity Claims Under 42 U.S.C. § 1983**

The defendants move to dismiss the claims Sorrow brings under 42 U.S.C. § 1983 against UTMB and against Dr. Jones in her official capacity as a state employee. Sorrow's official-capacity claims are, in effect, claims against the State of Texas. *See Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F. 3d 625, 630 (5th Cir. 2011). UTMB is a state agency. *See* TEX. GOV'T CODE § 572.002(10)(B) ("state agency" means a university system or institution defined by TEX. EDUC. CODE § 61.003); TEX. EDUC. CODE § 61.003(5) & (8) (listing UTMB). Sorrow's claims against Dr. Jones in her official capacity are another way of pleading claims against UTMB. *See Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). Federal courts lack subject-matter jurisdiction over suits against a State for money damages unless the State has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting § 1983. *NiGen*, 804 F.3d at 394. The State of Texas is immune from Sorrow's claims for money damages against UTMB and against Dr. Jones in her official capacity. The motion to dismiss these claims is granted.

Sorrow also seeks injunctive relief. Prospective injunctive relief is not available from a state agency such as UTMB. *Lewis*, 665 F.3d at 630. A civil-rights plaintiff may seek prospective injunctive relief from a state official based on an ongoing federal constitutional violation. *See id.*

9

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)); *NiGen*, 804 F.3d at 394. In this case, for the reasons explained in more detail below, Sorrow has not pleaded that Dr. Jones is engaged in an "ongoing violation" of his rights. To the contrary, he has pleaded that he is on an indefinite medical work exemption. The motion to dismiss Sorrow's claims for injunctive relief is granted.

### B. The Individual Capacity Claims Under the Eighth Amendment

Sorrow also sues Dr. Jones in her individual capacity for violating his rights under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment. He bases his claim on the allegation that Dr. Jones denied him an indefinite medical exemption from work duties in October 2015 without conducting a physical examination, which led to the knee injury he suffered while working in the kitchen in June 2016.

To state a claim under the Eighth Amendment, Sorrow must allege facts that would support an inference of "deliberate indifference to [his] serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). The deliberate indifference standard has both an objective and a subjective component. The plaintiff must show that: (1) the prison official was aware of facts from which the inference of an excessive risk to the prisoner's health and safety could be drawn; and (2) the official actually drew that inference. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence,

but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665. *See Easter*, 467 F.3d at 464. A decision about medical treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A prisoner's mere disagreement with the medical treatment he received does not state a claim for deliberate indifference. *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015); *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999). A medical decision not to order a particular test or treatment "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Even poor professional judgment or medical malpractice do not rise to the level of "deliberate indifference" necessary to show a constitutional violation. *Harris*, 198 F.3d at 159.

Dr. Jones has invoked qualified immunity, a defense that "protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law." *Crostley v. Lamar Cty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)). Sorrow has the burden to show that immunity should not apply. *Id.* To meet this burden, Sorrow must allege the violation of a constitutional right that was clearly established when it occurred. *See Estate of Henson v. Wichita Cty, Tex.*, 795 F.3d 456, 462 (5th Cir. 2015); *Crostley*, 717 F.3d at 422. A constitutional right is clearly established when the contours of the right were so clear that "a reasonable official would understand that what he is doing violates that right." *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012) (internal citations and quotation marks omitted).

Sorrow claims that Dr. Jones was deliberately indifferent to his serious medical needs because, despite knowing about his knee problems, she authorized only a 60-day rather than an indefinite medical exemption. Sorrow alleges that Dr. Jones did so without conducting a physical

examination, and that she misinterpreted results from an MRI examination and other medical testing and therefore "wantonly disregarded [his] serious medical needs." (Response, Docket Entry No. 60, at 7). Sorrow alleges that he hyperextended his knee when he was required to work in the prison kitchen after his 60-day medical exemption had lapsed.

Sorrow's allegations are insufficient to meet his burden of pleading facts that would show that Dr. Jones violated his clearly established Eighth Amendment rights. To the extent that Sorrow contends that Dr. Jones failed to conduct a proper physical examination or misinterpreted medical test results, these allegations sound in negligence or medical malpractice, not deliberate indifference. *See Hinojosa*, 807 F.3d at 665; *Domino,* 239 F.3d at 756; *Harris*, 198 F.3d at 159. Sorrow's own recitation of the facts reflects that he received regular medical care after Dr. Jones treated him, and that his work exemptions were extended repeatedly and then made indefinite. The facts also defeat his constitutional claim. *See Brauner*, 793 F.3d at 500 ("[d]eliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials") (internal citation, alteration, and quotation marks omitted); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir.1992) ("The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities.").

Although Sorrow alleges that Dr. Jones acted in bad faith, he does not support this allegation with sufficient facts to overcome qualified immunity. Based on the record, Sorrow's allegation that Dr. Jones improperly changed his work exemption from indefinite to temporary does not demonstrate deliberate indifference and is insufficient to state a claim under the Eighth Amendment.

Because Dr. Jones is entitled to qualified immunity, the motion to dismiss Sorrow's Eighth Amendment claims against her is granted.

### C. The § 1983 Retaliation Claim

Sorrow alleges that Dr. Jones retaliated against him when she gave him a short-term rather than an indefinite medical work exemption. He alleges that Dr. Jones retaliated against him because he had looked up her medical profile and told other inmates—incorrectly—that she was not licenced to practice medicine at the C.T. Terrell Unit. He also alleges that Dr. Jones retaliated against him because she learned that he was a sex offender.

To state a retaliation claim under 42 U.S.C. § 1983, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *See McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The prisoner must allege more than his personal belief that retaliation motivated the challenged actions. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The inmate must produce or identify direct evidence of retaliation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). A retaliation claim requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *See Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166.

Sorrow fails to meet the first requirement for a retaliation claim because he has not alleged facts showing that he suffered an adverse act as the result of exercising of a specific constitutional right. The defendants cite public records showing that Dr. Jones was properly licensed to practice medicine in the State of Texas. (Motion to Dismiss, Docket Entry No. 54, at 6 n.1 (citing Public

13

Verification/Physician Profile, Texas Medical Board, available at https://public.tmb.state.tx.us/HCP_Search/SearchNotice.aspx). Sorrow's information was false, but he has not alleged facts supporting an inference that Dr. Jones retaliated against him for giving the false information to other inmates, much less had a constitutional right to do so that was causally linked to his work-exempt status. *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, to state a claim, the inmate "must allege the violation of a specific constitutional right.").

Given that Dr. Jones actually continued Sorrow's exemption from work, albeit on a short-term basis, Sorrow does not plead or identify facts showing the required adverse act. *See McFaul*, 684 F.3d at 578. Sorrow's allegation that Dr. Jones mistreated him because he is a sex offender and that she had him transferred from one area of the prison to another lack any support and are insufficient to state a retaliation claim. Sorrow's personal, subjective belief as to Dr. Jones's motive is insufficient. He has not alleged a chronology of events from which a retaliatory motive may plausibly be inferred. *See Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. Because Sorrow has not alleged or identified facts showing that he would have been given a longer or indefinite exemption from work or kept in a specific unit or part of a unit but for a retaliatory motive by Dr. Jones, he does not allege a valid retaliation claim against her. The motion to dismiss Sorrow's retaliation claim against Dr. Jones is granted.

### D. The Claims Under the Americans with Disabilities Act

#### 1. Discrimination

Sorrow appears to allege that UTMB and Dr. Jones have violated the Act by refusing to

14

excuse him from work on an indefinite basis and to provide various medical treatments.[4] The Act prevents a "public entity" from discriminating against a qualified individual based on that individual's disability. 42 U.S.C. § 12133 (creating remedy for violation of Section 12132); 42 U.S.C. § 12132. A "public entity" includes a state government or its departments and agencies. 42 U.S.C. § 12131(1). *See United States v. Georgia*, 546 U.S. 151, 154 (2006). The Act abrogates Eleventh Amendment immunity only to the extent that the challenged conduct also violates a constitutional right. *Id.* at 158-59. A plaintiff states a claim for discrimination under the Act if he alleges: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Sorrow has not alleged that he was denied access to a program, service, or activity, or that he was otherwise discriminated against, "by reason of his disability." *See Hale*, 642 F.3d at 499; *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (a plaintiff suing for a violation of the Act may recover compensatory damages only on a showing of intentional discrimination). Sorrow fails to state a claim for unlawful discrimination under the Act. The defendants' motion to dismiss his disability discrimination claim is granted.

---

[4] Sorrow alleges that Dr. Jones, as a UTMB employee, is individually liable for discrimination under the Act. The Act does not permit discrimination claims against individual defendants in their personal capacities. *See* 42 U.S.C. § 12132. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir.1999) (the Rehabilitation Act, which provides a remedial framework similar to the Disabilities Act, similarly does not provide for individual liability); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (individual defendants are not personally liable for discrimination under Title II of the Act); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838 (S.D. Tex. 2008) (Act does not permit suit for monetary damages or injunctive relief against individual defendants in their personal capacities) (citing, *inter alia*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)).

## 2. Retaliation

Sorrow attempts to assert a retaliation claim under the Act against Dr. Jones based on the same facts he alleged to support his § 1983 claim. The Act prohibits retaliation against an individual that is motivated by the individual's opposition to acts that violate the Act. *See* 42 U.S.C.§ 12203(a) ("Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). Sorrow has not alleged that Dr. Jones ended his indefinite exemption from work or took other adverse action against him because he opposed an act or practice that violated the Act. The motion to dismiss Sorrow's Americans with Disabilities Act retaliation claim is granted.

## IV. Conclusion and Order

Because Sorrow has failed to state a valid claim against UTMB and Dr. Jones, this motion to dismiss, Docket Entry No. 54, is granted.

SIGNED at Houston, Texas, on October 31, 2017.

_____
Lee H. Rosenthal
Chief United States District Judge